DODGE MANUF'G CO. *v.* PUSTER *et al.*

(*Circuit Court, N. D. Illinois.* December 30, 1889.)

PATENTS FOR INVENTIONS—INFRINGEMENT.
    Complainant's president being the owner of letters patent, under which it manufactured split pulleys, assigned an interest therein, with the right in the assignee to manufacture, and any improvements were to be joint property. An employe of complainant instructed the assignee in the manufacture, and, it appeared, used substantially the forms claimed in a patent for which he applied, but assigned to the president, who assigned immediately after its issue to complainant. *Held*, that complainant could not dispute the right of the assignee to manufacture under the last patent.

In Equity. Bill for infringement of letters patent.
*West & Bond*, for complainant.
*J. H. Raymond*, for defendants.

BLODGETT, J. The bill in this case charges the infringement by defendants of the first claim of patent No. 275,947, granted April 17, 1883, to Gustavus B. Sanborn, for a "split pulley," and of claims Nos. 2, 3, 4, and 5 of patent No. 351,064, granted October 19, 1886, to Wallace H. Dodge, assignee of Charles McNeal, for a "wooden pulley," and asks an injunction and accounting. The devices covered by both these patents, and their utility, is aptly described in the second paragraph of the Sanborn patent, as relating to "split pulleys made of wood, or mainly so, such as are used on shafting for driving machinery, and which are split, or made in separate sections or halves, to provide for putting them on or taking them off their shaft laterally relatively to the shaft, whereby they may be hung or removed without disturbing the shaft, and without interfering with other pulleys or devices on the shaft, or the hangers carrying the shaft." The principal feature covered by these two patents is the division of the pulley by a zigzag line, so that the irregular surfaces, when brought together, will interlock, and thus aid in preventing displacement of the parts on the line of separation,—split pulleys being an old device, and the patents now in question being only for improvements on them. The defenses interposed are: (1) That the defendant is agent in the city of Chicago for the sale of pulleys manufactured by the Milburn Gin & Machine Company of Memphis, Tenn., and that by certain dealings and transactions between the complainant company and Wallace H. Dodge, the president of the complainant company, and J. D. & T. H. Milburn, and the Milburn Gin & Machine Company, said Milburn Gin & Machine Company were licensed and authorized to manufacture the pulleys in question, which were sold by the defendant, as the agent of said gin and machine Company. (2) That the claims of which infringement is charged in the respective patents involved herein are void for want of patentable novelty in the devices therein described. (3) That defendants do not infringe.

In regard to the alleged license or permission to the Milburn Gin & Machine Company to manufacture the pulleys in question, the proof

shows that, for some time prior to the 20th of February, 1885, the complainant company had been engaged in the business of manufacturing split pulleys as licensees of Wallace H. Dodge, its president, under patent No. 260,462, granted July 4, 1882, to Wallace H. Dodge and George Philion, and patent No. 276,330, granted April 24, 1883, to said Wallace H. Dodge,—the said Dodge being also the principal stockholder of the complainant company, and the manager of its business affairs; that some time shortly prior to February 20, 1885, the factory and plant of the complainant company were substantially destroyed by fire, whereby said company met with a severe loss, and became financially embarrassed, and the said Wallace H. Dodge, by reason of said loss, also became seriously embarrassed and in need of funds or other means to sustain his own credit and that of the complainant; that on the 20th of February, 1885, said Dodge entered into a contract with J. D. & T. H. Milburn, of Memphis, Tenn., whereby he conveyed to the said Milburns one-half of the two last above mentioned patents Nos. 260,462 and 276,330, with provisions for the joint management of the interests growing out of the ownership of said patents by a joint-stock company, to be organized by the parties to said contract, and with the further provision in the contract that "any improvements in pulleys that may be discovered from time to time by either parties, or any improvements that may be purchased from others, shall belong jointly to the parties" to said contract; that, as part of the consideration for the transfer of said patents, the Milburns, by their credit and means, aided the complainant company and Dodge, its president, to the amount of nearly $20,000, and it was understood and agreed that the Milburn Gin & Machine Company, which was mainly owned by the Milburns, should at once enter upon the manufacture of split pulleys of the same kind manufactured by the complainant company; that, in accordance with said agreement and understanding, the Milburn Gin & Machine Company sent one of its men to the complainant company's factory at Mishawaka, Ind., to have him there instructed in the art and business of manufacturing split pulleys, and the complainant furnished to said agent and employe of the Milburn Gin & Machine Company all necessary instruction in the manufacture of such pulleys, and with all patterns and drawings necessary to enable the Milburn Gin & Machine Company to enter upon said branch of manufacturing, and that the patterns and drawings, so furnished to the said agent and employe of the Milburn Gin & Machine Company, were substantial representations of split pulleys, constructed in accordance with the McNeal patent and the claims thereof now before the court; that Charles McNeal, the alleged inventor of the device covered by the McNeal patent, was at that time the foreman of the complainant's factory, and instructed the said agent, and furnished him with the drawings and plans for such manufacture; that the Milburn Gin & Machine Company at once entered upon the manufacture of split pulleys, substantially the same in form and construction as those manufactured by the complainant company, and like those in question in this suit, and has continued such manufacture up to the commencement of this suit, with the knowl-

edge of the complainant company; that said Charles McNeal, the alleged inventor of the device covered by the McNeal patent, at or about the time he applied for said patent, assigned all his interest therein to the said Wallace H. Dodge, president of the complainant company, and the said McNeal patent was in accordance with said assignment issued to the said Dodge, as the assignee of McNeal, and that a few days after the issue of said patent said Dodge assigned said patent to the complainant company; that differences arose between the Milburn Gin & Machine Company and the complainant company soon after the issue of the McNeal patent, in regard to accountings between them under the said contract of February 25, 1885, but, although the Milburn Gin & Machine Company has continued to manufacture pulleys substantially like those covered by the claims here in question in the McNeal patent, the complainant has never attempted to enjoin or restrain the Milburn Gin & Machine Company from such manufacture.

Here, then, we have the fact established that in February, 1885, complainant was making split pulleys substantially like those now in controversy, under a shop right to use the patents Nos. 260,462 and 276,-330, which were owned by the said Wallace H. Dodge, who then was, and still is, the principal owner in complainant company, and manager of its affairs; that Dodge, for the purpose of obtaining means whereby to continue the business of the complainant company, assigned half these two patents to the Milburns, and the Milburns, in turn, licensed the Milburn Gin & Machine Company to enter upon the manufacture of split pulleys in said two patents, and the complainant company proceeded to furnish the Milburn Gin & Machine Company with instructions in the art of manufacturing split pulleys, and with drawings and plans for the construction of such pulleys, substantially identical with the form of construction for such pulleys provided for in the McNeal patent, and that the complainant acquiesced in and aided and encouraged the Milburn Gin & Machine Company in entering upon said manufacture.

I think, from the facts disclosed, the inference is fairly justifiable that McNeal, as the foreman of the complainant company, had substantially perfected whatever improvement the McNeal patent shows in the construction of split wood pulleys, at the time the Milburn Gin & Machine Company sent their employe to complainant's factory for instructions, and that in instructing and starting the Milburn Gin & Machine Company in such manufacture the complainant, knowing that the said gin and machine company only intended to manufacture under the Dodge and Philion and Wallace H. Dodge patents, still gave the Gin and Machine company to understand that the approved form of manufacture under said patents was that for which plans, drawings, and instructions were given to the said Gin and Machine company's agent. I think it very clear that McNeal made whatever invention there is covered by his patent as an employe of the complainant, and intended the complainant to have the benefit of it. This is shown by the fact that he transferred his application for a patent to Wallace H. Dodge, the president

of the complainant, and that, within a few days after the issue of the patent, said Dodge transferred the patent to the complainant, reciting that the complainant was the real owner thereof.

All the dealings and relations between Dodge and the Milburns, and the Milburns and the Milburn Gin & Machine Company, and between the complainant and the Milburn Gin & Machine Company, shown in the proof in this case, satisfy me that Dodge represented and spoke for the complainant company, and that the complainant company understood that the Milburn Gin & Machine Company was expected, under its license from the Milburns, to make just such pulleys as the complainant was then making, or might thereafter make, under any acquired patent. It therefore seems clear to me that the complainant, under the facts disclosed in this case, is estopped from complaining of the manufacture of split pulleys, such as are in controversy in this case, and such as are covered by the specifications and claims of the McNeal patent. It may also, I think, be fairly insisted that, inasmuch as the complainant company allowed the McNeal patent to issue to Wallace H. Dodge as owner, that whatever rights of manufacture are given under said patent inure to the Milburn Gin & Machine Company under the contract between Dodge and the Milburns, and the license from the Milburns to the Milburn Gin & Machine Company.

The Sanborn patent was not purchased by the complainant until some time in December, 1886, and I do not think it necessary to discuss or consider whether that patent came within the provision for the purchase of subsequent improvements in the contract between Dodge and the Milburns or not, as I am abundantly satisfied that the machines sold by the defendants do not infringe the first claim of that patent. The view I have taken in regard to the legal effect of the dealings between the complainant and the manufacturers, for whom defendants were acting as agents in the sale of the pulleys in question, relieves me from the necessity of passing upon the question of novelty raised by the defendants in this case. The bill is therefore dismissed for want of equity.