## DODGE MANUF'G CO. v. ATKINS et al.

(Circuit Court of Appeals, Seventh Circuit. October 9, 1894.)

### No. 110.

PATENTS—EXTENT OF CLAIM—PRIOR ACT.

The Sanborn patent, No. 275,947, for a "split pulley," is limited, as to the first claim, by the language of the patent and the prior state of the art, to a solid wooden pulley divided into two sections, in a serpentine or irregular course, so that the parts will interlock when adjusted together on the shaft.

Appeal from the Circuit Court of the United States for the District of Indiana.

This was a suit in equity by the Dodge Manufacturing Company against E. C. Atkins & Co. for alleged infringement of two patents relating to wooden pulleys. The circuit court dismissed the bill on the merits, and the complainant has appealed.

Lysander Hill, for appellant.

R. H. Parkinson, for appellees.

Before JENKINS, Circuit Judge, and ALLEN and BAKER, District Judges.

JENKINS, Circuit Judge. The appellant filed its bill in the court below to restrain the alleged infringement by the appellee of the first claim of the patent dated April 17, 1883, No. 275,947, granted to Gustavus B. Sanborn, for "split pulley"; and for the alleged infringement of a patent dated October 19, 1886, No. 351,064, granted to Charles McNeal, for "wooden pulley." The court below dismissed the bill upon the merits. The appellant assigned for error—"First, that the court below erred in placing upon the Sanborn claim in suit a construction so limited and so narrow as not to cover the defendant's pulleys; second, also in holding that the defendant's pulleys did not infringe the Sanborn patent."

The sole question before us upon this appeal has reference to the first claim in the Sanborn patent, which is as follows:

"A transversely divided or split pulley having its sections constructed upon their meeting surfaces to form a serpentine or zigzag joint, and to receive the shaft which carries the pulley in between them, substantially as specified."

Mr. Sanborn, in the specification to the letters patent, thus describes his invention, and its relation to the prior art:

"This invention relates to split pulleys made of wood, or mainly so, such as are used on shafting for driving machinery, and which are split or made in separate sections or halves, to provide for putting them on or taking them off of their shaft laterally relatively to the shaft, whereby they may be hung or removed without disturbing the shaft, and without interfering with other pulleys or devices on the shaft, or the hangers carrying the shaft. Such split wooden pulleys are ordinarily made by constructing them in halves transversely on a straight line or course, and making the meeting surfaces of their sections perfectly true, and doweling them together. This mode of construction very materially enhances the cost of such pulleys over or as compared with solid pulleys, and makes them inferior as regards strength. My invention consists in a split wooden pulley, which is made from a solid pulley divided into sections in a serpentine or irregular course, to fit them on the

shaft from opposite sides, and, after securing such sections together, turning them in common to secure the proper shape, size, and truth to the pulley. Thus constructed, the pulley sections will come together with a perfect fit after each separation of them, and will not wear and work loose when united. The serpentine cut by which the pulley is divided into separate sections is arbitrary, and may be greatly varied; nor need the pulley sections be of equal size."

Split wooden pulleys were well known at the date of Sanborn's patent. It was then old in the art to dowel together the halves of such pulleys where the halves were formed separately, or the unit sawed into halves. It was also old to accomplish this doweling by means of tongues and grooves upon the faces of the halves. It was also old to interlock two wooden surfaces by means of recesses in the one and projections or dowel pins in the other. It was also old to divide bodies in a serpentine or irregular course, producing zigzag surfaces interlocking without further adjustment. What Mr. Sanborn accomplished by his patented invention was this: He divided a solid pulley in a serpentine or irregular course, producing two surfaces whose entire meeting faces interlocked, creating the interlocking surfaces by the process of division. By this mode it is claimed he renders the pulley superior in respect of strength to resist strain, and reduces the cost as compared with pulleys whose halves are separately constructed.

In this state of the art, if we assume novelty and value for Sanborn's invention, we think the claim should be limited to that which he has described in his specification, namely, a solid pulley divided into sections in a serpentine or irregular course. It was not original with him to divide a wooden body with its sections constructed upon their meeting surfaces to form a serpentine or zigzag joint. He possibly was the first to apply that process to a solid wooden pulley, creating the interlocking surfaces by the act of division. But we do not think that the state of the art or the description in the specification warrants a broad claim for pulleys constructed upon their meeting surfaces to form a serpentine or zigzag joint, without regard to the limitation declared in the specification, viz. a solid pulley thus divided. Sanborn's design was to produce a stronger pulley at a less expense. He sought to supersede the mode of separate construction of the halves, and the doweling of them together. He sought, by the act of division, to make the surfaces interlocking, and thus to give added strength to resist strain, and to cheapen the manufacture. He is not, however, entitled to a broad monopoly for applying an old invention of interlocking surfaces to a wooden pulley, irrespective of the mode by which it is accomplished. If his claim can be sustained as patentable, we think it should be limited to the division of a solid pulley, the act of division creating the interlocking surfaces. Thus limited, it is clear that the appellee does not infringe. Its pulley is a spoke pulley; its meeting surfaces interlocking at the rim by means of a series of projections and recesses. It is built in halves, the face of one being constructed with predetermined reference to the face of the corresponding half with which it is to engage; and the strain, which in the Sanborn pulley is sought to be resisted by the interlocking throughout the entire surfaces, is

here resisted, in part at least, by the insertion of dowels in the one-half fitting into openings in the other half. Each half is composed of segments with straight edges, and so placed in the construction of the half that the blocks overlap. The defendant's pulley is substantially identical, so far as respects the question of infringement, with the Puster pulley, which, in Manufacturing Co. v. Puster, 42 Fed. 54, was held by Judge Blodgett not to infringe, in which conclusion we fully concur.

The decree will be affirmed.